No. 25-2593

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

BARRY GLENN WILLIAMS,

*Plaintiff-Appellant*,

*v.*

COUNTY OF LOS ANGELES, et al.,

*Defendants-Appellees*.

———————————————

Appeal from the United States District Court
for the Central District of California
No. 2:24-CV-04071-DOC-BFM

**OPENING BRIEF OF APPELLANT BARRY GLENN WILLIAMS**

Steve Art
David B. Owens
Roz Dillon
Meg Gould
Madison Irene
Aaron Tucek
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
gould@loevy.com
*Counsel for Plaintiff-Appellant*

# **TABLE CONTENTS**

TABLE OF CONTENTS................................................................ i

TABLE OF AUTHORITIES .........................................................iii

INTRODUCTION .........................................................................1

JURISDICTIONAL STATEMENT ..............................................3

ISSUES PRESENTED..................................................................4

STATEMENT OF THE CASE.......................................................5

     A.    Relevant Factual Background ............................................5

     B.    Procedural Background .......................................................7

SUMMARY OF THE ARGUMENT ...........................................11

STANDARDS OF REVIEW.......................................................13

ARGUMENT ..............................................................................16

I.     Plaintiff's Claims Regarding The Dunn Murder Conviction Are Timely ....16

     A.    It Was Error to Dismiss Plaintiff's Complaint on the Basis of the Statute of Limitations, Given Questions of Fact that Determine Whether the Statute of Limitations Can Apply...................................16

     B.    Assuming *Arguendo* the Court Reaches the Issue, Plaintiff's Claims Are Timely ..............................................................20

             1.  The Law on Statute of Limitations and Accrual ...........20

             2.  The Complaint Alleges Facts Sufficient to Find the Statute of Limitations Accrued in 2023, Making Plaintiff's Claims Timely ..............................................21

             3.  In the Alternative, Even Assuming the Plaintiff's Claims Accrued in 2021, They Are Timely ..................24

         a.  Dismissal Not Vacatur Controls Accrual ............ 24

         b.  Statutory Tolling Must Apply .............................. 28

    C.    It Was Error to Dismiss Plaintiff's Complaint on the Basis of the Statute of Limitations, Given Questions of Fact that Determine Whether Equitable Tolling Applies Cannot Be Resolved In this Posture ........................................................................................ 29

II.    Plaintiff's Claims Regarding His Billingsley Murder Conviction Are Not Barred by *Heck v. Humphrey* .................................................... 32

    A.    Legal Standard ........................................................................ 33

    B.    Plaintiff's Claims Regarding the Billingsley Murder Are Not *Heck*-Barred ........................................................................... 35

    C.    The Complaint (Appropriately) Lacks Essential Facts for a *Heck* Determination, Making Dismissal Inappropriate ............................. 40

III.    At Minimum, And In the Alternative, Plaintiff Must Be Allowed To Amend The Complaint .................................................................. 44

CONCLUSION ...................................................................................... 47

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*,
  525 F. App'x 585 (9th Cir. 2013) ........................................................................18

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) .............................................................................17

*Allen v. A.H. Robins Co.*,
  752 F.2d 1365 (9th Cir. 1985) .............................................................................20

*Allen v. Barnes*,
  243 F.3d 546 (9th Cir. 2000) ...............................................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................14

*Atwood v. United States*,
  735 F. App'x 399 (9th Cir. 2018) .................................................................13, 46

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1997) ...............................................................................45

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................14

*Bradford v. Scherschligt*,
  803 F.3d 382 (9th Cir. 2015) ..........................................................24, 25, 27, 28

*Burgert v. Lokelani Bernice Pauahi Bishop Tr.*,
  200 F.3d 661 (9th Cir. 2000) ........................................................................13, 14

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) .............................................................................14

*Connors v. Graves*,
  538 F.3d 373 (5th Cir. 2008) ...............................................................................34

**Cases**                                                                              **Page(s)**

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir.1997) ...............................................................5

*Cummings v. City of Akron*,
   418 F.3d 676 (6th Cir. 2005) ............................................................34

*Enesco Corp. v. Price/Costco Inc.*,
   146 F.3d 1083 (9th Cir. 1998) ...........................................................14

*Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co.*,
   132 F.3d 526 (9th Cir. 1997) .............................................................14

*Est. of Amaro v. City of Oakland*,
   653 F.3d 808 (9th Cir. 2011) .............................................................20

*Flynt v. Shimazu*,
   940 F.3d 457 (9th Cir. 2019) .............................................................20

*Gera v. Palihapitiya*,
   No. CV-23-02164-PHX-MTL, 2024 WL 3818602
   (D. Ariz. Aug. 14, 2024) ...................................................................17

*Golden v. Faust*,
   766 F.2d 1339 (9th Cir. 1985) ...........................................................18

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir.2002) ...................................................................

*Gordon v. City of Oakland*,
   627 F.3d 1092 (9th Cir. 2010) ...............................................................

*Grasso v. McDonough Power Equip., Inc.*,
   264 Cal. App. 2d 597 (Cal. Ct. App. 1968) ......................................28

*Hardin v. Straub*,
   490 U.S. 536 (1989)...........................................................................28

| **Cases** | **Page(s)** |
|---|---|

*Hebrard v. Nofziger*,
90 F.4th 1000 (9th Cir. 2024) ...............................................................33

*Heck v. Humphrey*,
512 U.S. 477 (1994).................................................................*passim*

*Heck. Atwood v. United States*,
735 F. App'x 399 (9th Cir. 2018) ...........................................................13

*In-N-Out Burgers v. In & Out Tire & Auto, Inc.*,
No. 207-CV-01556-LRH-LRL, 2008 WL 3413324
(D. Nev. Aug. 8, 2008) ...........................................................................17

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) .................................................................30

*Jackson v. Barnes*,
749 F.3d 755 (9th Cir. 2014) .................................................26, 27, 35

*Jackson v. Giurbino*,
364 F.3d 1002 (9th Cir. 2004) ...............................................................27

*Jones v. Bock*,
549 U.S. 199 (2007).................................................................................17

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .........................................15, 26, 43, 44

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .................................................................15

*Lemos v. Cnty. of Sonoma*,
40 F.4th 1002 (9th Cir. 2022) .........................................13, 33, 34, 41

*Lyall v. City of Los Angeles*,
807 F.3d 1178 (9th Cir. 2015) ...............................................................34

| Cases | Page(s) |
|---|---|

*Manuel v. Joliet*,
  580 U.S. 357 (2017).................................................................21

*Martell v. Cole*,
  115 F.4th 1233 (9th Cir. 2024) ...........................................33

*McDonough v. Smith*,
  588 U.S. 109 (2019).......................................................*passim*

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ...........................................14

*Mills v. City of Covina*,
  921 F.3d 1161 (9th Cir. 2019) ......................................20, 21

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009) .............................................45

*Muhammad v. City of Bakersfield*,
  671 F. App'x 982 (9th Cir. 2016)........................................34

*Muhammad v. Garrett*,
  66 F. Supp. 3d 1287 (E.D. Cal. 2014) ...............................34

*Nance v. Ward*,
  597 U.S. 159 (2022).............................................................20

*Nelson v. Campbell*,
  541 U.S. 637 (2004).............................................................33

*Nelson v. Jashurek*,
  109 F.3d 142 (3d Cir. 1997) ...............................................34

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ...........................5, 13, 14, 45

**Cases**                                                             **Page(s)**

*Palmer v. Arizona*,
No. 21-15020, 2022 WL 2304234 (9th Cir. June 27, 2022) ........................34, 47

*Perry v. Merit Sys. Prot. Bd.*,
582 U.S. 420 (2017).................................................................................16

*Polich v. Burlington N., Inc.,*
942 F.2d 1467 (9th Cir.1991) ...............................................................45

*Poventud v. City of New York*,
750 F.3d 121 (2d Cir. 2014) ...........................................................*passim*

*Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*,
No. 16-CV-00669-YGR, 2017 WL 3284177 (N.D. Cal. Aug. 2, 2017) .......17, 46

*Reina-Rodriguez v. United States*,
655 F.3d 1182 (9th Cir. 2011) ................................................................44

*Rivera v. Philip Morris, Inc.*,
395 F.3d 1142 (9th Cir. 2005) ...............................................................15

*Roberts v. City of Fairbanks,*
947 F.3d 1191 (9th Cir. 2020) ......................................................23, 38, 39

*Rosales-Martinez v. Palmer,*
753 F.3d 890 (9th Cir. 2014) ................................................................34

*Scott v. Kuhlmann,*
746 F.2d 1377 (9th Cir. 1984) ...............................................................16

*Smithart v. Towery,*
79 F.3d 951 (9th Cir.1996) ...................................................................19

*So v. Kondas*,
485 F. App'x 201 (9th Cir. 2012) ...........................................................18

*Stanley v. Trs. of California State Univ.*,
433 F.3d 1129 (9th Cir. 2006) ...............................................................14

**Cases**                                                               **Page(s)**

*Stevenson v. Holland,*
No. 16-cv-01831-AWI-SKO, 2017 WL 2958731
(E.D. Cal. July 11, 2017) .................................................................31

*Supermail Cargo, Inc. v. United States,*
68 F.3d 1204, 1206-07 (9th Cir. 1995) ........................................30, 31

*Taylor v. County of Pima,*
913 F.3d 930, (9th Cir. 2019) ......................................................33, 37

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.,*
931 F.3d 996 (9th Cir. 2019) ............................................................16

*United States v. Corinthian Colleges,*
655 F.3d 984 (9th Cir. 2011) ............................................................43

*United States v. Page,*
116 F.4th 822 (9th Cir. 2024) ...........................................................16

*Vaughan v. Grijalva,*
927 F.2d 476 (9th Cir. 1991) ............................................................17

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,*
739 F.2d 1434 (9th Cir. 1984) ..........................................................19

*Wallace v. Kato,*
549 U.S. 384 (2007) ........................................................................20

*Wasco Prods., Inc. v. Southwall Techs., Inc.,*
435 F.3d 989 (9th Cir. 2006) ............................................................46

*Washington v. Los Angeles Cnty. Sheriff's Dep't,*
833 F.3d 1048 (9th Cir. 2016) ..........................................................34

**Cases**                                                           **Page(s)**

*Wynn v. Clark Co. Bd. of Comm'rs*,
    74 F. App'x 808 (9th Cir. 2003) ...........................................................30

*Young v. Wenger*,
    No. 23-cv-02691-SI, 2024 WL 4294653 (N.D. Cal. Sept. 24, 2024).................31

*Zimmerman v. City of Oakland*,
    255 F.3d 734, 737 (9th Cir. 2001) .......................................................5

## STATUTES AND OTHER AUTHORITIES

CAL. CODE OF CIV. P. § 352.1(a)........................................................28, 29

FED. R. CIV. P. 15(a)(2) ...................................................................15, 44

## **INTRODUCTION**

Plaintiffs Barry Williams and Damien Williams brought this civil-rights action under 42 U.S.C. § 1983 to seek redress for constitutional violations during criminal proceedings in the 1980s that they allege caused Barry Williams to spend decades incarcerated for murder charges that have now been dismissed.[1] The complaint, which was not required to anticipate affirmative defenses, was filed within two years of the final dismissal of the charges that supported the criminal proceedings that Plaintiff now challenges. On its face, the complaint is timely filed.

Nonetheless, Defendants sought and obtained dismissal of Plaintiff's claims at the pleadings phase below. First, they argued that some of Plaintiff's claims were untimely, reasoning the claims accrued at vacatur of the convictions rather than at the termination of the criminal proceedings. It was improper to resolve a statute-of-limitations defense at the pleadings phase where, as here, the information relevant to that defense is not contained in the complaint and cannot be fully resolved without further factual development. In addition, the view of accrual that Defendants advanced below is simply wrong; the claims presented here did not accrue until the

---

[1] Damien Williams is Barry Williams's son and brings claims related to the loss of familial relationship and other damages occasioned by Barry Williams's convictions. 3-ER-359-438 at 3-ER-333, 412-413, and 434-435. Because the viability of Damien's claims turns on the timeliness and pleading issues concerning his father's claims as addressed in this brief, they are not separately addressed. For ease, this brief refers to Barry Williams as "Williams" and to "Plaintiff" though there are two plaintiffs in this action.

"criminal proceedings ha[d] resolved in the plaintiff's favor." *McDonough v. Smith*, 588 U.S. 109, 110 (2019). It was error, then, to dismiss on that basis.

As to Plaintiff's remaining claims, Defendants sought and obtained dismissal essentially by reasoning that Plaintiff's claims were too early. On this argument, even though Williams spent decades imprisoned on murder convictions from the 1980's that were dismissed, even though the complaint does not challenge Plaintiff's extant convictions, and even though those extant convictions do not account for more than 32 years Plaintiff spent incarcerated, Defendants contend the claims are barred by the rule forbidding challenges to an extant conviction from *Heck v. Humphrey*, 512 U.S. 477 (1994). As with the statute-of-limitations issue, the face of the complaint does not address this defense and so, again, dismissal of Plaintiff's claims on that argument was improper. Relatedly, dismissal below was premised on interpreting thousands of pages of documents at the pleading phase that exist outside of the complaint, even though some of those documents conflict with Plaintiff's allegations. This, too, was error.

Plaintiff's complaint was timely filed and the factual development that would pertain to the statute-of-limitations or *Heck* issue cannot be done in summary fashion at the pleadings phase, including through improper use of "judicial notice." This Court should reverse.

## **JURISDICTIONAL STATEMENT**

Plaintiff brings this action under 42 U.S.C. § 1983 and California state law. The district court had jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. The district court entered a final order on April 2, 2025, 1-ER-002-023, which was timely appealed. 2-ER-025-047. This Court's jurisdiction is secure.  28 U.S.C. § 1291.

## ISSUES PRESENTED

1.    Whether the assertion of an affirmative defense of the statute of limitations, which cannot be resolved on the face of the complaint, can be resolved based upon summary adjudication via judicial notice and without Plaintiff having the opportunity to present evidence that might preclude the applicability of that defense.

2.    Assuming *arguendo* the timeliness of Plaintiff's constitutional claims can be resolved in this posture, whether any of Plaintiff's claims are barred by the statute of limitations, when the claims accrued at the dismissal of the murder charges that supported the criminal proceedings that the complaint challenges, and when Plaintiff commenced suit within two years of that date.

3. Whether the assertion of an affirmative defense, that Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), can be resolved at the pleadings phase when that complaint does not challenge an extant conviction, and where the information required to determine the applicability of *Heck* necessarily extends beyond the complaint.

## STATEMENT OF THE CASE

### A.    Relevant Factual Background[2]

On June 16, 1981, Donald Billingsley was shot and killed in a park in South Central Los Angeles. 3-ER-359-438 at 3-ER-381. On March 25, 1982, a man named Jerome Dunn was shot and killed in South Central Los Angeles. *Id*. 3-ER-366.

Williams was charged with both murders in intertwined criminal proceedings. Though Williams was originally charged with the Billingsley murder alone, those charges were quickly dropped. *Id.* 3-ER-366.  That same day, the State re-indicted Williams and simultaneously charged him with both the murder of Billingsley (and related other charges), as well as the murder of Jerome Dunn. *Id*. 3-ER-366.

Defendants built a case against Williams based on false and unreliable eyewitness and jailhouse informant testimony; they fabricated evidence, and they failed to disclose exculpatory and impeachment evidence to Williams or his defense counsel. *See, e.g., id*. 3-ER-360, 366, 368.

Williams went to trial on both cases. In a March 1985 trial, Williams was found guilty of first-degree murder of Billingsley (one count), attempted murder (two counts), and conspiracy to commit murder (one count), for which he was sentenced

---

[2] The facts are drawn from Plaintiff's complaint and are presented in a light most favorable to him, as is required at the pleadings stage. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001); *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir.1997); *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001).

to 34 years to life in prison. *Id*. 3-ER-367 After sentencing but before the second trial, the State added the Billingsley murder conviction as a "special circumstance" to the Dunn murder charge. *Id*. 3-ER-367. At the second trial, Williams was convicted of murdering Dunn. *Id*. 3-ER-367. Williams was then sentenced to death, where the basis for that sentence was the Billingsley murder conviction. *Id*. 3-ER-367.

In 2016, a federal court vacated the Dunn murder conviction finding, among other things, that Williams's due process rights had been violated by the presentation of false testimony. *Id*. 3-ER-368. Criminal proceedings were ongoing and Williams faced retrial for years until, in January 2021, the Dunn murder charge was finally dismissed. *Id*. 3-ER-369.

Williams also filed a petition for habeas corpus concerning the Billingsley murder. *Id*. 3-ER-369. While that petition was pending, the State entered into an agreement with Williams whereby his murder conviction was vacated; the Billingsley murder charge was dismissed; and the life sentence was vacated. *Id*. ¶¶47-48. Williams pleaded guilty to a new charge of voluntary manslaughter, and his attempted murder convictions remained intact. *Id*. 3-ER-369-370. The court resentenced Williams to a total sentence just under 9 years (eight years and eight months), with credit given for time served. *Id*. 3-ER-370. Williams was released on May 8, 2023, after 41 years of incarceration. *Id*. 3-ER-370.

In sum, Williams spent over 32 years incarcerated—nearly all of which was on death row—on the basis of murder charges that have now been dismissed. The final resolution of these criminal proceedings was not complete until May 2023. *Id*. 473-ER-369.

## B.     Procedural Background

On May 16, 2024, Williams and his son Damien filed this civil rights action pursuant to 42 U.S.C. § 1983 and California law. 3-ER-359-438. Plaintiff's federal claims allege that all individual Defendants: (1) deprived Williams of his right to due process, *id*. 3-ER-404-409; (2) conspired among each other to deprive Williams of his constitutional rights, *id*. 3-ER-409-411; and (3) interfered with Williams and Damien's rights to familial association, *id*. 3-ER-412-413. Plaintiff further alleges that the City of Los Angeles ("City") and the County of Los Angeles ("County") each maintained customs, policies, or practices that directly caused the violations of Williams's constitutional rights. *Id*. 3-ER-414-430.

The County moved to dismiss the complaint. 3-ER-322-358. Relevant here, the County argued that the federal claims were time-barred because they accrued when Williams was granted habeas relief in 2016 and, even with relevant statutory tolling, Williams needed to file this suit in or around March 2020. *Id*. at 3-ER-337-343.

7

With its motion to dismiss, the County filed a request for judicial notice, asking the district court to judicially notice myriad documents including "the complete docket, including all filings, orders, and exhibits" from Williams's habeas corpus proceedings. 3-ER-318-321 at 3-ER-319.

The City followed suit. In seeking judgment on the pleadings, the City argued that Plaintiff's federal claims were barred by the statute of limitations, raising essentially the same arguments as the County. 3-ER-288-317 at 3-ER-306-307. In addition, the City argued Williams's *Monell* claims in connection with the Billingsley murder were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), reasoning that, though his murder conviction was vacated, the manslaughter and attempted murder convictions remained extant. *Id*.

The City likewise requested the district court take "judicial notice of the court file in" Williams's habeas corpus case and several records filed in the underlying criminal case, including: (1) a copy of the docket from July 15, 2016 to May 9, 2023; (2) the July 13, 1982 felony complaint; (3) the October 5, 1982 information; and (4) the May 13, 1985 amended information. 2-ER-281-286 at 2-ER-285.

Plaintiff opposed the motions, arguing that *Heck* presents no bar for the Billingsley-related claims, as the dismissal of the Billingsley murder conviction constituted a favorable termination. 2-ER-234-280 at 2-ER-262-265. As for timeliness, Plaintiff argued that, even if they were separate events, given the

8

relatedness of the Billingsley and Dunn criminal proceedings, the Dunn-related claims accrued in May 2023, when the Billingsley murder conviction was dismissed. *Id*. at 2-ER-266-268, 271-272. In the alternative, Plaintiff argued that the earliest the claims would have accrued was January 2021, when the Dunn charges were officially dismissed which, along with applicable statutory tolling, made the Dunn-claims timely. *Id*. 2-ER-268-269, 273.

Plaintiff also opposed the County's motion for judicial notice. 2-ER-068-075. Plaintiff argued that taking wholesale judicial notice of thousands of pages of documents from Williams's habeas corpus matter, many of which were inaccessible to Plaintiff because they were filed under seal, would be an inappropriate use of judicial notice at the motion to dismiss stage. *Id*. at 2-ER-071-074. Should Defendants' requests for judicial notice be granted, however, Plaintiff sought judicial notice of several documents from Williams's criminal case and habeas proceedings "to provide the Court with a more fulsome procedural and factual context for the pending motions to dismiss." *Id*. at 2-ER-071.

The district court granted the Defendants' motions to dismiss and dismissed the complaint *without leave to amend*. 1-ER-002-023. In so doing, the court granted all requests for judicial notice, though it stated that it would not accept as true facts subject to reasonable dispute. *Id.* at 1-ER-012. Turning to the claims related to the Dunn murder conviction, the court found those claims time-barred. *Id*. at 1-ER-013.

9

According to the district court, the claims related to the Dunn murder conviction accrued in 2016 when Williams's conviction was vacated, not when the Dunn murder charges were dismissed or when the Billingsley murder charge was dismissed. *Id*. at 1-ER-014. Equitable tolling, the court concluded, did not apply to Plaintiff's claims, because it was unclear from the record why Plaintiff could not have filed his claims earlier. *Id*. at 1-ER-016-017. As for the Billingsley-related claims, the district court concluded they were barred by *Heck* because of the extant attempted murder convictions. *Id*. at 1-ER-018-022. The district court reasoned that success on the Billingsley-related claims would necessarily imply the invalidity of the remaining attempted murder convictions, without acknowledging that the circumstances of the attempted murders were not contained in the complaint. *Id.* at 1-ER-019-020. Because the court dismissed all the federal claims, it did not reach the state-law claims. *Id*. at 1-ER-022. And it concluded that, because the allegations in the complaint could not be amended to make the complaint timely or to avoid the *Heck* bar, amendment would be futile. *Id*. Accordingly, the court dismissed the complaint in its entirety without leave to amend. *Id.*

Plaintiff timely filed this appeal. 2-ER-025-047.

## SUMMARY OF THE ARGUMENT

Plaintiff in this lawsuit alleges that the Defendants fabricated and suppressed evidence, causing Barry Williams to spend three decades wrongfully incarcerated for the 1981 and 1982 murders of Donald Billingsley and Jerome Dunn. Though Williams does not seek damages for the entire 41 years he spent incarcerated, he does seek redress for the now-dismissed murder charges that led to his incarceration on death row.

Under Rule 8, a plaintiff need only provide notice of his claims and is therefore not required to stake out or even anticipate affirmative defenses. Motions to dismiss or for judgment on the pleadings that raise affirmative defenses— particularly those concerning facts that are not evident on the face of the complaint— are generally improper. Indeed, factual development for adjudication at summary judgment is necessary to determine whether a statute of limitation applies or is subject to a plaintiff's defense (like tolling or other equitable doctrines), or whether a *Heck* bar applies because success on a complaint's claims would necessarily impugn the validity of a conviction.

Here, Plaintiff timely filed his Dunn-related claims. Constitutional claims that challenge the validity of ongoing criminal proceedings do not accrue until the "criminal proceedings have resolved in the plaintiff's favor." *McDonough v. Smith*, 588 U.S. 109, 110 (2019). Plaintiff's complaint repeatedly and thoroughly alleges

the criminal proceedings, convictions, and sentences for the Dunn and Billingsley murders involve substantial overlap and are intertwined, such that claims related to either murder conviction must accrue at the same time. As a result, Plaintiff's Dunn-related claims accrued when the Billingsley murder conviction was vacated in May 2023.

Alternatively, the Dunn-related criminal proceedings could still be revived against Williams up until the Dunn murder conviction was officially dismissed in 2021. Accordingly, Plaintiff's Dunn-related claims accrued, at the earliest, in January 2021. That accrual date, coupled with straightforward statutory tolling principles, make Plaintiff's complaint timely. Either way, dismissal below was error.

In the end, because the applicability of the statute of limitations remains unclear—and because Plaintiff's potential defenses to the statute of limitations have not been explored in discovery whatsoever—remand is necessary for further proceedings.

In addition, Plaintiff's claims related to the Billingsley murder conviction are not *Heck*-barred. Under *Heck*, a § 1983 action is barred if success in the action would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). To decide whether a plaintiff's success on a § 1983 claim would "necessarily imply the invalidity of a conviction" or sentence, courts must engage in a fact-based analysis of the

underlying conviction compared against the claims made by the plaintiff. *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (emphasis omitted). For example, to avoid a *Heck* bar, a plaintiff may cabin their claims in a manner that does not challenge an extant conviction. Plaintiff easily does that here by seeking damages for 32 years he spent behind bar on a now-overturned murder conviction and *not* the almost 9 years he served on the extant charges. Rarely, if ever, will all the information necessary for a *Heck* determination be apparent on the face of the pleadings, and, even then, a plaintiff should be given leave to replead to state a claim that is not, on its face, barred by *Heck*. *Atwood v. United States*, 735 F. App'x 399, 400 (9th Cir. 2018) (reversing denial of leave to amend to add claims that would not be subject to *Heck* bar). Because the core facts necessary for evaluating these issues are not contained in the pleadings, courts resolve *Heck* issues based on a fulsome record, at summary judgment, not the pleadings phase. *Lemos*, 40 F.4th at 1005. Again, either way, remand is necessary.

For these reasons, this Court should respectfully reverse and remand.

## STANDARDS OF REVIEW

Orders granting a motion to dismiss or a judgment on the pleadings are reviewed *de novo*. *See Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000); *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001).

In evaluating Rule 12 motions, a plaintiff's allegations of material fact contained in the complaint must be taken as true and construed in the light most favorable to the nonmovant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Burgert*, 200 F.3d at 663; *Owens,* 244 F.3d at 713; *Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir. 1998). A motion may be granted only when, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trs. of California State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *see also Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co*., 132 F.3d 526, 529 (9th Cir. 1997). Dismissal is appropriate only where the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008).

The hurdle for surviving a Rule 12 motion is not high: A plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

Courts deciding early dismissal motions under Rule 12 must do so based on the facts alleged in the pleadings. *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012). At the pleading stage, a court may consider extrinsic evidence only if it falls within two specific categories: "material which is properly submitted as

14

part of the complaint" or "matters of public record" subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Even where a court is permitted to go beyond the complaint, judicial notice is limited to the existence and authenticity of a document, not the truth of contents that are not readily and accurately ascertainable from the face of the document itself. Where documents present factual issues that are subject to reasonable dispute, courts may not take judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018) ("Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."); *see also Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) ("'[A] high degree of indisputability is the essential prerequisite' to taking judicial notice of adjudicative facts and . . . 'the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy.'" (quoting Fed. R. Evid. 201(a) & (b) advisory committee's notes).

## ARGUMENT

## I. Plaintiff's Claims Regarding The Dunn Murder Conviction Are Timely.

It was error to dismiss the complaint on the basis of an affirmative defense, particularly the statute of limitations, at the pleadings phase. That defense cannot be resolved on the basis of the complaint and Plaintiff's defenses (like tolling due to fraud) require factual development. Reversal is warranted on this basis. Regardless, and alternatively, Plaintiff's claims related to the Dunn conviction were timely filed, also warranting reversal.

### A. It Was Error to Dismiss Plaintiff's Complaint on the Basis of the Statute of Limitations, Given Questions of Fact that Determine Whether the Statute of Limitations Can Apply.

"In civil litigation, . . . an affirmative defense to a plaintiff's claim for relief" is "not something the plaintiff must anticipate and negate in her pleading." *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017). Accordingly, there is no requirement for a plaintiff to "plead around affirmative defenses," such as the statute of limitations. *United States v. Page*, 116 F.4th 822, 829 (9th Cir. 2024) (quoting *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 996, 972 (9th Cir. 2019)). "Ordinarily affirmative defenses may not be raised by motion to dismiss." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

Granting a motion to dismiss based upon an affirmative defense is "rare because a plaintiff is not required to say anything about [the facts concerning

affirmative defenses] in his complaint." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007) (same).

The running of the statute of limitations, as an affirmative defense, may be raised by a motion to dismiss only if it is apparent from the face of the complaint that the statute of limitations has run. *Vaughan v. Grijalva*, 927 F.2d 476, 479 (9th Cir. 1991). Here, the face of the complaint does not set forth the factual issues necessary to resolve the statute of limitations question. Whether the statute of limitations has run in a case like this one is rarely straightforward. That is because, although the relevant two-year statute of limitations for such § 1983 claims (discussed below) is fixed, a variety of other considerations determine when that term begins to run—i.e. accrue—as well as whether the fixed period is subject to tolling.

Indeed, district courts in this circuit routinely deny motions directed at the pleadings raising the statute of limitations as an affirmative defense because they require additional fact development and cannot be decided on the basis of the complaint alone. *See, e.g.*, *Gera v. Palihapitiya*, No. CV-23-02164-PHX-MTL, 2024 WL 3818602, at *6 (D. Ariz. Aug. 14, 2024); *Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 3284177, at *5 (N.D. Cal. Aug. 2, 2017); *In-N-Out Burgers v. In & Out Tire & Auto, Inc*., No. 2:07-CV-01556-LRH-LRL, 2008 WL 3413324, at *3 (D. Nev. Aug. 8, 2008).

17

And statute-of-limitations defenses may be so infested with factual disputes that they cannot be determined at summary judgment and require a jury for resolution. *See, e.g.*, *Golden v. Faust*, 766 F.2d 1339, 1341 (9th Cir. 1985) (reversing grant summary judgment on statute of limitations); *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc*., 525 F. App'x 585, 585 (9th Cir. 2013) ("Genuine issues of material fact preclude summary judgment on the question of whether the statute of limitations bars Plaintiff's claims."); *So v. Kondas*, 485 F. App'x 201, 202 (9th Cir. 2012) ("Because questions of fact exist regarding the date when So was on inquiry notice of the fraud or had actually discovered it, entry of summary judgment based on the running of the statute of limitations constituted error.").

Even with the well-pleaded facts in the complaint, questions of fact regarding both claim accrual and Plaintiff's defenses to the assertion of any statute of limitations for the Dunn-related claims are not capable of *complete* resolution at the pleadings phase. For example, the complaint contains allegations that: (1) the Dunn and Billingsley murder investigations, prosecutions, and convictions were inextricably intertwined, including in that the Dunn death penalty sentence was based on the Billingsley conviction; (2) that the Billingsley murder conviction was vacated pursuant to a plea agreement in 2023; (3) that, though Williams obtained habeas relief on the Dunn murder conviction in 2016 he remained subject to retrial for years thereafter and while he was challenging the Billingsley conviction; and

18

(4) that Defendants suppressed favorable evidence from Plaintiff. 3-ER-359-438 at 3-ER-360, 366, 368-369.

From those facts, Plaintiff essentially contends that the capital sentence of death imposed as a result of the Dunn murder convicted was necessarily based on the Billingsley murder conviction, which was not vacated and dismissed until 2023. In other words, and based on the unique facts here, in order for Plaintiff to make a full-throated challenge to the Dunn sentence and conviction presented in this case— that is to have "a complete and present cause of action"—Williams had to get the Billingsley murder conviction dismissed. *McDonough*, 588 U.S. at 109.[3]

Finally, Plaintiff could learn new information during civil discovery concerning Defendants' conduct or misrepresentations, the suppression or fabrication of evidence (a form of potential fraud), or other issues that may impact Defendants ability to assert the statute of limitations. *See, e.g.*, *Golden*, 766 F.2d at 1341 (reversing dismissal based on statute of limitations due to question of fact about fraud); *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1437 (9th Cir. 1984) (dispute of fact as to defendant's conduct required reversal of summary

---

[3] Indeed, because Plaintiff challenges the Dunn-related murder conviction as part of his challenges to the Billingsley conviction, there is an argument that if Plaintiff tried to bring the claims earlier than 2023, they would have been subject to the *Heck* bar as challenging the capitol sentence would have been "fundamentally inconsistent" with the existence of the Billingsley conviction. *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

19

judgment on statute of limitations ground). Indeed, had Plaintiff been permitted to amend his complaint, following the assertion of the affirmative defense of statute of limitations, he could have responded by arguing—consistent with the *Brady* allegations—that equitable estoppel prevents the assertion of the statute of limitations. *See, e.g.*, *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813-815 (9th Cir. 2011); *Allen v. A.H. Robins Co. Inc.*, 752 F.2d 1365, 1371-72 (9th Cir. 1985).

In short, because the universe of facts necessary to make a definitive determination on Defendants' statute of limitations affirmative defense is not contained within the complaint, it was error to dismiss the complaint on this ground.

## B. Assuming *Arguendo* the Court Reaches the Issue, Plaintiff's Claims Are Timely.

### 1. The Law On Statute Of Limitations And Accrual.

"Section 1983 does not contain its own statute of limitations." *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019) (citation omitted). Instead, federal courts borrow the state statute of limitations for personal injury actions in § 1983 suits. *Nance v. Ward*, 597 U.S. 159, 174 (2022). Here, the parties do not dispute that California's two-year personal injury statute of limitations applies to Plaintiff's § 1983 claims.

While the statute of limitations is based on California law, federal law controls when a claim accrues and, therefore, when the applicable statute of limitations begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Mills v. City of Covina,*

921 F.3d 1161, 1166 (9th Cir. 2019) ("[A]ccrual occurs when the plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can file suit and obtain relief." (quoting *Wallace*, 549 U.S. at 388)). "An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough*, 588 U.S. at 109 (quoting *Manuel v. Joliet*, 580 U.S. 357, 370 (2017)).

Here, Plaintiff's § 1983 claims are related to allegations that Defendants fabricated evidence that tainted the criminal proceedings against Williams and resulted in unfair trials. *See*, *e.g.*, *Richards v. County of San Bernadino*, 39 F.4th 562, 569-70 (9th Cir. 2022). For each of these claims, the most analogous common-law tort is malicious prosecution, which accrues "only once the underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough*, 588 U.S. at 110. That favorable-termination requirement is animated by concerns with parallel litigation and conflicting judgments over the same subject matter. *Id*. at 119 (citing *Heck*, 512 U.S. at 484-86).

### 2. The Complaint Alleges Facts Sufficient To Find the Statute of Limitations Accrued In 2023, Making Plaintiff's Claims Timely.

Although key factual questions prevent a definitive conclusion on Defendants' statute of limitations defense at the pleadings stage, there are enough allegations in the complaint to support a conclusion that Plaintiff's claims are timely. That's all that was required to get past dismissal.

Construing Plaintiff's complaint in a light most favorable to Plaintiff, as is required at this stage, a reasonable conclusion is that the Dunn-related claims accrued on May 9, 2023, when the Billingsley murder conviction was vacated. That is so because, according to the complaint's well-pleaded allegations, Williams's convictions were inextricably intertwined and, fundamentally, Williams's challenge to his death-row sentence required him to get the murder charge on the Billingsley case vacated.

The district court disagreed, reasoning that "because the Billingsley murder conviction did not rely on the Dunn conviction or sentence," Williams was free to bring his Dunn-related claims as soon as he obtained habeas relief notwithstanding the outstanding Billingsley murder conviction. 1-ER-002-023 at 1-ER-014-015.

That is both inaccurate and upside down.

It is inaccurate because it conflicts with the allegations in the complaint. Plaintiff alleged repeatedly in his complaint that the Dunn and Billingsley murder convictions were intertwined and that the Dunn death penalty sentence was based on the prior Billingsley murder conviction. *See*, *e.g.*, 3-ER-359-438 at 3-ER-360, 366, 367, 381, 405, 410. Specifically, Plaintiff alleged that: (1) Williams was charged for the Billingsley and Dunn murders in the same criminal complaint, *id*. 3-ER-366; (2) the Dunn death penalty sentence was based on the prior Billingsley

murder conviction, *id*. 3-ER-367; and (3) Defendants conspired to frame Williams for the Billingsley and Dunn murders at the same time, *id*. 3-ER-360, 410.

That is upside down because the question is not whether the Billingsley murder conviction relied on the Dunn murder but whether the Dunn murder charges relied on the Billingsley murder conviction. Undisputedly, they did. Taking the complaint's allegations as true, as is required at the pleading stage, the interlocking criminal proceedings did not end until *both* criminal proceedings terminated in his favor. Thus, Williams only had a complete and present cause of action to obtain relief when the Billingsley murder was vacated in 2023. *McDonough*, 588 U.S. at 109; *see also Roberts v. City of Fairbanks*, 947 F.3d 1191, 1200 (9th Cir. 2020) (explaining that where a murder conviction is vacated as part of a settlement agreement, that constitutes favorable termination even where the criminal defendant pleads guilty to an original count of conviction).

Given the applicable two-year statute of limitations, the Dunn-related claims in Plaintiff's complaint filed in May 2024 were more than timely. In addition, to the extent these facts alleged in the complaint are subject to challenge, the extent of the interconnectedness of the Dunn and Billingsley criminal proceedings and the relationship between the sentences imposed on Williams is a (potentially disputed) question of fact.

### 3. In the Alternative, Even Assuming the Plaintiff's Claims Accrued in 2021, They Are Timely.

Alternatively, the Dunn-related claims accrued, at the earliest, when the Dunn-related charges were dismissed on January 14, 2021, because, until that point, Williams was still subject to retrial on those very same charges. In other words, the dismissal of the Dunn charges was the earliest point at which the criminal proceedings terminated in Williams's favor. *McDonough*, 588 U.S. at 110. And, if the claims accrued on this date, then straightforward application of statutory tolling makes the Dunn-related claims timely.

### a. Dismissal, Not Vacatur, Controls Accrual.

Even if there were previously a question about whether it is the vacatur of a conviction or the "favorable termination" of the criminal charges that determines federal accrual, the Supreme Court has, consistent with Circuit precedent, conclusively resolved that issue. It is favorable termination that controls. *McDonough*, 588 U.S. at 110. The favorable-termination requirement is rooted in pragmatic concerns of avoiding parallel criminal and civil litigation over the same subject matter and the possibility of conflicting judgments. *Id.* at 119 (citing *Heck*, 512 U.S. at 484-86). Accordingly, where a conviction is vacated but criminal proceedings are ongoing, including the possibility of retrial on the same charges, there is no favorable termination. *Id.*; *see also Bradford v. Scherschligt*, 803 F.3d 382, 387-89 (9th Cir. 2015).

24

Up until the Dunn-related charges were dismissed, Williams could have still been retried on the same charges using some of the same (tainted) evidence that had been used at his original trial. For Williams, then, the underlying Dunn criminal proceedings were not favorably terminated until the charges against him were dismissed on January 14, 2021 such that he was no longer under threat of having those charges revived. That makes sense: Otherwise, Plaintiff would have had to bring the Dunn-related claims while Williams was still facing the possibility of criminal charges based on the very same alleged misconduct and evidence being challenged in the civil suit. That risk of parallel civil and criminal litigation, and potentially conflicting results, is precisely the outcome Supreme Court—and this Court's—accrual caselaw seeks to avoid. *McDonough*, 588 U.S. at 119 (citing *Heck*, 512 U.S. at 484-86); *Bradford*, 803 F.3d at 388-89.

Below, the Defendants argued, and the district court accepted, that the Dunn-related claims accrued on March 29, 2016—the date Williams's federal habeas petition was granted—because that is when the Dunn murder conviction was vacated. 1-ER-002-023 at 1-ER-014-015. That conclusion misconstrues the law and improperly relies on disputed facts that appear nowhere in Plaintiff's complaint.

In finding that the Dunn-related claims accrued on March 29, 2016—the date Williams's federal habeas petition was granted—the district court pointed to *Bradford*, where this court suggested that a claim "could accrue upon vacatur of a

25

conviction if the conviction was set aside in a manner precluding the government from maintaining charges on the evidence presented at the initial trial." 803 F.3d at 388 (citing *Jackson v. Barnes*, 749 F.3d 755, 760-61 (9th Cir. 2014)). The district court reasoned, "[t]his is precisely what happened when [Williams's] habeas petition was granted for the Dunn murder conviction," because even though Plaintiff was still subject to retrial, "the government was prevented by the habeas order from using any unconstitutionally obtained evidence in a potential retrial." 1-ER-002-023 at 1-ER-015.

That was wrong for at least four reasons.

First, it was inappropriate to use judicial notice in order to rely on the scope of the habeas order at the pleadings phase. The habeas order is not attached to or otherwise incorporated into the complaint by reference. *See generally* 3-ER-359-438. And while the district court may have been permitted to take judicial notice of its existence and authenticity, the order's contents were off-limits. *Khoja*, 899 F.3d at 999.

Second, confirming this is not a pleadings-phase issue, the scope and import of the habeas order is disputed. The order concluded that Williams was entitled to relief because "the magnitude of the prosecution's combined substantial errors," left the Court with "no confidence in the jury's verdict." 3-ER-359-438 at 3-ER-368. It also broadly prohibited the use of certain "tainted evidence," without specific

evidentiary rulings or an examination of what original evidence could, or could not, be used again in a trial on the same charges. 1-ER-002-023 at 1-ER-015. Critically, the order still permitted the government to bring the exact same charges against Williams, leaving risk of ongoing prosecution based on much of the same evidence.

However, Williams's complaint did not—and could not—identify the evidence that prosecutors intended to use against him in a retrial, or how a trial court would construe the scope of "tainted" evidence. *See generally* 3-ER-359-438. Because neither the four corners of the complaint nor the habeas order make plain that Williams's Dunn conviction "was set aside in a manner precluding the government from maintaining charges on evidence presented at the initial trial," the related § 1983 claims did not accrue until the conviction was actually dismissed. *McDonough*, 588 U.S. at 110.

Third, the circumstances referred to in *Bradford* about vacatur constituting favorable termination because certain evidence could not be used on retrial are not present here. 803 F.3d at 388. There, this Court pointed to *Jackson v. Barnes*, which involved a conviction based upon a custodial statement the plaintiff contended was obtained unlawfully. 749 F.3d at 760-61. The state was precluded from using that statement in a future prosecution. *Id.* at 759-60 (citing *Jackson v. Giurbino*, 364 F.3d 1002, 1005, 1007-12 (9th Cir. 2004)). The plaintiff was convicted at a second trial, where the statement was suppressed and not referred to. *Id.* The rationale of *Jackson*,

if it survives *McDonough*, is plainly inapplicable here. Here, the habeas court granted relief based on "the magnitude of the prosecution's *combined substantial errors*," 3-ER-359-438 at 3-ER-368 (emphasis added), not by suppressing one piece of evidence that was not used at all in a second trial.

Regardless, both *Bradford* and *Jackson* were decided at the summary judgment phase and neither support the resolution of these fact-dependent issues at the pleading phase.

### b. Statutory Tolling Must Apply.

Although this lawsuit commenced in 2024, straightforward application of statutory tolling demonstrates the timeliness of the Dunn-related claims. State law determines the application of tolling doctrines. *Hardin v. Straub,* 490 U.S. 536, 543-44 (1989). And California Code of Civil Procedure § 352.1 provides that, "If a person entitled to bring an action, … is, *at the time the cause of action accrued*, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limit for the commencement of the action, not to exceed two years." CAL. CODE OF CIV. P. § 352.1(a) (emphasis added). Tolling under § 352.1, as the district court correctly recognized, applies to those serving life sentences with the possibility of parole, as Williams was once the Dunn conviction was vacated. *See Grasso v. McDonough Power Equip., Inc.*, 264 Cal. App. 2d 597, 599-601 (Cal. Ct. App.

1968); *Allen v. Barnes*, 243 F.3d 546, *1-3 (9th Cir. 2000) (unpublished); *see also* 1-ER-002-023 at 1-ER-016; 3-ER-359-438 at 3-ER-367.

Williams was still incarcerated on the Dunn convictions in January 2021, just as he was in March 2016, and he remained incarcerated until May of 2023. Accordingly, he was entitled to the full two years of statutory tolling under § 352.1(a). Those two years of statutory tolling in addition to California's two-year statute of limitations allowed Williams four years from the date of accrual, until January 14, 2025, to timely file his lawsuit. Because Plaintiff filed his complaint in May 2024, the Dunn-related claims raised in the lawsuit were timely.[4]

### C. It Was Error to Dismiss Plaintiff's Complaint on the Basis of the Statute of Limitations, Given Questions of Fact that Determine Whether Equitable Tolling Applies Cannot Be Resolved In this Posture.

As was just explained, Plaintiff's Dunn-related claims were timely on the face of the complaint. However, to the extent this Court disagrees, remand is

---

[4] The district court assumed without deciding that tolling under California Government Code § 945.3 also applies and then spent much of its tolling discussion speculating as to whether statutory and equitable tolling provisions can be tacked together consecutively. 1-ER-002-023 at 1-ER-016-017. Plaintiff does not challenge on appeal the district court's conclusion that two statutory tolling provisions cannot be tacked together. As argued below, however, Plaintiff notes that tacking the statutory tolling provisions at issue with any available equitable tolling is an open question not ripe for resolution at the pleading stage because of outstanding factual questions.

29

required for further factual development necessary to determine whether the Plaintiff is entitled to any equitable tolling that makes those federal claims timely.

Dismissal at the pleadings phase that denies the defense of equitable tolling is almost never appropriate "[b]ecause the applicability of the equitable tolling doctrine often depends on matters outside the pleadings." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995). Indeed, "[a] motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Id.* at 1206-07 (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980)). Accordingly, this Court regularly reverses dismissals where "the factual and legal issues are not sufficiently clear to permit [the court] to determine with certainty whether the doctrine could be successfully invoked." *Id.* (collecting cases); *see also Wynn v. Clark Co. Bd. of Comm'rs*, 74 F. App'x 808, 809 (9th Cir. 2003).

Here, the district court summarily concluded that Plaintiff's federal claims were not entitled to equitable tolling, finding that Plaintiff had failed to provide any justification for such tolling on his federal claims and that it was "unclear why there was excusable delay." 1-ER-002-023 at 1-ER-017-018. Even so, the court then summarily concluded that a finding of equitable tolling would prejudice Defendants because they did not have any notice of the claims against them. *Id.*

30

Such uncertainty around the question of excusable delay is the exact reason why the decision on equitable tolling—and indeed why decisions on equitable tolling more generally—are reserved for summary judgment or trial. *See Supermail Cargo, Inc.*, 68 F.3d at 1206-07. And the court's bare assertion that there was prejudice to Defendants based on lack of notice—again, without any facts supporting whether there *was* notice to Defendants given that the pleadings themselves did not address notice as to the federal claims—also supports that the district court's decision was premature.

Further, the district court's premature decision on equitable tolling was compounded by its unsupported assumption that "tack[ing] together equitable tolling and [statutory] tolling . . . is not proper." 1-ER-002-023 at 1-ER-017. In fact, whether courts can tack together statutory and equitable tolling is an unresolved question of California law that has divided district courts, and one that depends on a plaintiff's various asserted grounds for tolling. *See, e.g.*, *Young v. Wenger*, No. 23-cv-02691-SI, 2024 WL 4294653, at *4-5 (N.D. Cal. Sept. 24, 2024) (collecting cases); *Stevenson v. Holland*, No. 16-cv-01831-AWI-SKO, 2017 WL 2958731, at *4-6 (E.D. Cal. July 11, 2017) (same). That puts Plaintiff doubly at a disadvantage. Not only are the factual bases necessary to properly develop an equitable tolling argument unavailable at this stage in the litigation, but without a

31

well-developed record, Plaintiff's ability to articulate why equitable and statutory tolling should tack in these circumstances is severely limited.

In short, even if this Court finds that Plaintiff's claims were not timely based on accrual principles, it should reverse and remand for the factual development necessary for the district court to consider arguments for tolling.

## II. Plaintiff's Claims Regarding his Billingsley Murder Conviction Are Not Barred by *Heck v. Humphrey*.

Plaintiff's conviction for the Billingsley murder was dismissed in 2023, after he had spent 41 years imprisoned. To bring closure and secure his freedom, Plaintiff pleaded to voluntary manslaughter and agreed to drop his challenges to the attempt-murder convictions in the Billingsley case. In this action, while Plaintiff seeks damages for the 32 years he spent on death row as a result of the murder convictions, he does not challenge any extant conviction or the time he served for the other offenses, which amount to a just under 9 years (8 years and 8 months). In short, nothing about Plaintiff's challenge to the 32 years being on death row for *murder* challenges the time spent, or facts supporting, the still extant convictions.

Nonetheless, Plaintiff's claims regarding his Billingsley murder conviction were dismissed as barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). That was a separate error that should be reversed for at least three reasons. First, *Heck* bars a § 1983 action when its success would "necessarily require" that the plaintiff prove the unlawfulness of an existing conviction. But Plaintiff does not challenge

32

his extant convictions. Second, the complaint does not contain the full factual basis for Plaintiff's extant convictions, and judicial notice cannot be used to circumvent that limitation. Third, because Plaintiff can cabin his claims and damages, he should have been given leave to replead rather than subject to dismissal. Reversal is warranted.

### A. Legal Standard

Under *Heck*, a section 1983 action is barred if success in the action would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck*, 512 U.S. at 486. "*Heck* 'stress[ed] the importance of the term 'necessarily' to avoid giving Heck's preclusion rule too wide a sweep.'" *Martell v. Cole*, 115 F.4th 1233, 1236 (9th Cir. 2024) (quoting *Nelson v. Campbell*, 541 U.S. 637, 647 (2004)). Put differently, a plaintiff may not recover damages "for any period of incarceration supported by a valid, unchallenged conviction and sentence." *Taylor v. County of Pima*, 913 F.3d 930, 936 (9th Cir. 2019).

"To decide whether success on a section 1983 claim would *necessarily* imply the invalidity of a conviction, we must determine which acts formed the basis for the conviction." *Lemos*, 40 F.4th at 1006 (emphasis in original). Should the requisite factual basis be apparent on the face of the pleadings, then *Heck* issues may be determined at the pleading stage. *Cf. Taylor*, 913 F.3d at 935-36. However, *Heck* is an affirmative defense, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024)

(agreeing "*Heck* is an affirmative defense"), and a plaintiff need not "plead around affirmative defenses." *Page*, 116 F.4th at 829; *see also Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) ("[C]ompliance with *Heck* most closely resembles the mandatory administrative exhaustion of PLRA claims, which constitutes an affirmative defense and *not a pleading requirement*." (emphasis added)).

As a result, when facts material to a *Heck* determination are absent from the pleadings, this Court has resolved *Heck*-related issues *after* those facts have been developed in discovery. *See, e.g., Lemos*, 40 F.4th at 1005 (*Heck* issues determined at summary judgment); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1181 (9th Cir. 2015) (same); *Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1297 (E.D. Cal. 2014) (same), *aff'd sub nom. Muhammad v. City of Bakersfield*, 671 F. App'x 982 (9th Cir. 2016); *cf. Rosales-Martinez v. Palmer,* 753 F.3d 890, 898 (9th Cir. 2014) (on appeal from motion to dismiss, remanding case back to district court for the court to "*pursue all relevant facts and inquiries."*) (emphasis added). Other Circuits are in accord. *See, e.g., Poventud v. City of New York*, 750 F.3d 121, 124-25 (2d Cir. 2014) (en banc) (reviewing district court's summary judgment decision on *Heck* issues); *Cummings v. City of Akron*, 418 F.3d 676, 682-84 (6th Cir. 2005) (same); *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008) (same); *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997) (same).

**B.** **Plaintiff's Claims Regarding the Billingsley Murder Are Not *Heck*-Barred.**

The district court agreed that Williams's conviction for the Billingsley murder was dismissed, as pleaded in Plaintiff's complaint. That should have been the end of the *Heck* discussion, as Plaintiff seeks damages related to that now-dismissed conviction. *See, e.g.,* 3-ER-359-438 at 3-ER-405 ("Defendants . . . fabricat[ed] evidence, fail[ed] to disclose material exculpatory evidence, fail[ed] to correct false evidence, and conduct[ed] a reckless investigation into the *murder of Billingsley*[.]") (emphasis added).

Instead, the district court concluded that Williams's extant attempted murder convictions barred him from pursuing claims for damages related to his vacated murder conviction.[5] That is incorrect. Williams's intact convictions were the legal basis of a fraction of his decades-long incarceration, most of which resulted from his now-dismissed murder convictions. *See* 3-ER-359-438 at 3-ER-369. While these remaining convictions may limit his damages, they do not *per se* bar claims based on the vacated murder conviction alone. Thus, there is no *Heck* bar for pursuing

---

[5] The district court considered Plaintiff's 2023 plea to involuntary manslaughter a "'clean conviction' untainted by the earlier constitutional violations and not barred by *Heck*." 1-ER-002-023 at 1-ER-022 (quoting *Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014)). Thus, while the plea could "impact damages assessments," *id.*, it did not present a *Heck* bar. *Id.* Thus, the only subject of this appeal on *Heck* grounds is whether the attempted murder convictions present a *Heck* bar.

damages for the years of Williams's incarceration stemming from the Billingsley murder conviction. This warrants reversal.

As just explained, a § 1983 action is barred under *Heck* if success in the action would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement[.]" *Heck*, 512 U.S. at 485. *Heck* focuses on claims for damages stemming from a particular conviction or sentence:

> [I]n order to *recover damages* for allegedly unconstitutional conviction or imprisonment. . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . A claim for *damages bearing that relationship to a conviction or sentence* that has *not* been so invalidated is not cognizable under §1983.

*Id.* at 486-87 (emphasis added).

Thus, there must be a relationship between the claim for damages and the conviction or sentence that has been vacated.

Here, Williams's conviction for the Billingsley murder has been dismissed, and his complaint advances claims for damages relating to incarceration for *that* offense. Thus, there is no *Heck* bar for Plaintiff to seek damages for claims "bearing [a] relationship to" his wrongful murder conviction and sentence for that conviction. *Heck*, 512 U.S. at 486-87.

Additionally, Williams's extant convictions are separate from the underlying murder conviction for which Plaintiff seeks damages. Plaintiff argues

below, *infra* at Section II.C, that determining whether his claims are barred under *Heck* because those claims challenge the validity of the extant convictions is premature at the pleading stage, as facts necessary to that determination are absent from the complaint. However, what Plaintiff's complaint does make clear is that the extant attempted murder convictions were not the *legal cause* of the entire period of Williams's incarceration for the Billingsley murder—but rather a fraction of his overall incarceration. *See* 3-ER-359-438 at 3-ER-369 (explaining Williams's credit for time served for extant convictions). At the least, Plaintiff must be able to recover damages for the time *un*supported by those extant convictions.

Two cases illustrate the point. First, in *Taylor v. County of Pima*, this Court held that "a plaintiff in a 1983 action may not recover incarceration-related damages for any period of incarceration supported by a valid, unchallenged conviction and sentence." 913 F.3d 930, 936 (9th Cir. 2019). The plaintiff in *Taylor* was convicted of felony murder and later entered into a plea agreement whereby his original conviction was vacated. In that plea agreement, Taylor pleaded no contest to identical counts,[6] was resentenced to time served, and was released from prison. The Court barred Taylor's §1983 claims for damages because, "as a matter of law, the [later] conviction caused the *entire period* of his incarceration." *Id.* at 935 (emphasis

---

[6] *Taylor* was decided at the pleading stage as—unlike here—there was no need to develop further facts of existing counts, given that Taylor's plea was to counts identical to the conviction.

added). Thus, the Court held that, "when a valid, unchallenged conviction and sentence justify the plaintiff's period of imprisonment, then the plaintiff cannot prove that the challenged conviction and sentence caused his imprisonment and any resulting damages." *Id.* at 936.

Williams's position is consistent with *Taylor* because his existing convictions did *not* cause the entire period of his incarceration for the Billingsley murder and do not bar his claims for damages related to that murder conviction. Williams's attempted murder convictions could—at most—justify the time to which Williams was sentenced and incarcerated expressly for those attempted murder counts.[7] Even including the time attributed to the 2023 manslaughter plea, which the district court here held did not implicate *Heck*, *see* 1-ER-002-023 at 1-ER-022, over 32 years of Williams's four-plus decades of incarceration were *only* supported by the now-dismissed murder convictions. *See*, *e.g.*, *Roberts*, 947 F.3d at 1199 ("We expressly held [in *Taylor*] that Heck did not bar Taylor from seeking damages related to the 1972 conviction—just that Taylor could not seek incarceration-related damages, because the valid 2013 conviction "[a]s a matter of law ... *caused the entire period* of his incarceration." *Id.* (quoting *Taylor*, 913 F.3d at 935) (emphasis added).

---

[7] Any factual questions as to *which* years of Williams's incarceration were supported by his now-vacated murder conviction, versus those intact attempted murder convictions, for purposes of damages, are to be adduced in discovery—not ones that can be decided at the pleading stage.

Recognizing the distinction between damages and the right to pursue § 1983 claims, *Roberts* noted that "*Heck* would bar only the non-vacated judgment," as the *Taylor* court "agreed that the 2013 conviction was valid because it had not been vacated, unlike the 1972 conviction." *Id.*

The Second Circuit is in accord with this approach. In *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) (en banc), a decision made at summary judgment given the factual complexity of the legal issues, the Second Circuit explained that *Heck* only barred a plaintiff from seeking damages for the years of incarceration that were legally supported by a valid criminal judgment—*not* from seeking damages for years in prison that were only legally justified by now-vacated convictions.

Poventud was originally convicted of attempted murder and several other related crimes and sentenced to 10-20 years of imprisonment. 750 F.3d at 124, 139. Years later, Poventud's convictions were vacated. *Id.* at 124. The district attorney's office opposed Poventud's release and indicated that it would appeal. Thereafter, pursuant to a subsequent agreement, Poventud pled guilty to attempted robbery in the third degree, with a stipulated one-year sentence. *Id.* Once released, Poventud initiated a suit under § 1983 for damages stemming from his wrongful conviction and incarceration but excluding the time he served pursuant to his guilty plea. *Id.*

The Second Circuit held that, because Poventud's complaint only sought damages for Poventud's time in prison *excluding* the time he served pursuant to his guilty plea, his *Brady*-based claim was not *Heck*-barred insofar as it related to his first conviction. *Id.* at 124-25, 134-36. In other words, were Poventud to win at trial, he would preserve the legal status of his second conviction. *Id.* at 136-38. He was permitted to pursue damages for the time served beyond that second conviction:

> Poventud seeks to recover damages for his initial conviction and for that portion of his lengthy imprisonment that was *attributable to that conviction*. That conviction exists no longer; a state court declared it invalid, and we must accept the outcome of the legal process that holds him not guilty of those offenses. *Heck* thus does not bar his suit.

*Id.* at 142 (J. Lynch, concurring) (emphasis added).

Williams must be allowed to pursue damages for those years of incarceration not legally justified by an existing conviction. Thus, he is not barred from pursuing his existing claims related to the now-vacated Billingsley murder conviction. It was error to conclude otherwise.

**C.    The Complaint (Appropriately) Lacks Essential Facts for a *Heck* Determination, Making Dismissal Inappropriate.**

The complaint outlines the actions taken by Defendants that resulted in Plaintiff's convictions for the murders of Dunn and Billingsley. While the complaint includes the fact that Williams has separate intact convictions, it lacks a complete accounting of the factual basis for those convictions. Because *Heck* requires

determining the acts "form[ing] the basis for the conviction" apparently being challenged, *Lemos*, 40 F.4th at 1006, such an analysis was impossible at this posture of the case.

The district court disagreed, based on suppositions that were not actually present in any part of Plaintiff's allegations. First, the district court found that "[t]he murder [of Billingsley] and attempted murder convictions arose from the same shooting on June 16, 1981," at a park in South Central Los Angeles. 1-ER-002-023 at 1-ER-020. The district court then reasoned that the complaint's allegations of false witness testimony leading to the wrongful conviction for murdering Billingsley would, if proven true, undermine evidence establishing Williams as one of the shooters at the park, his presence at the park, and his participation in the shooting. *Id*. And, without evidence that Williams was a shooter at the park on June 16, 1981, the district court opined that Williams could not have been responsible for shooting Freeman and Dubose. *Id*. Success on Plaintiff's claims then, the court found, would invalidate the attempted murder convictions. *Id*. at 1-ER-020-022. The court thus concluded that *Heck* barred Williams from bringing his claims.

To arrive at that conclusion, the district court relied on Plaintiff's complaint, the October 5, 1982 Criminal Information, and the May 1, 2023 Motion for Resentencing. 1-ER-002-023 at 1-ER-020. None of these documents, however,

41

demonstrate that the intact attempted murder convictions necessarily present a *Heck* bar to Plaintiff's claims regarding the Billingsley murder conviction.

First and most critically, nowhere in Plaintiff's complaint is there an allegation that any of Defendants' actions were specifically taken to cause Plaintiff's attempted murder convictions. Rather, the complaint's only mention of the attempted murder convictions are that (1) Williams was charged with two counts of attempted murder against Carol Freeman and Anthony DuBose, and (2) he was convicted of those counts. 3-ER-359-438 3-ER-366, 367. These facts are severely insufficient for a court to conclude that success on Plaintiff's §1983 claims regarding the Billingsley murder conviction would necessarily invalidate these intact convictions. Indeed, there are no allegations of where, when, or how the attempted murders were alleged to take place, or on what evidence the jury found Williams guilty of those counts. Likewise, there are no allegations about the scope of the verdict in the criminal trial, including whether and how the jury was instructed to find Williams guilty of the murder count or attempted murder counts. The pleadings allege that there was false testimony regarding Williams's presence in the park on the evening of the Billingsley murder, but not whether the attempted murder counts were based on one continuous incident in the park, or even whether the incidents involved the same alleged perpetrators. The pleadings do not allege whether the jury could have found Williams guilty of the attempted murder counts based on *specific*

42

facts adduced at trial that only supported those counts. Finally, Williams's pleadings do not allege facts from his sentencing for the Billingsley charges regarding which periods of incarceration were strictly tied to Plaintiff's now-vacated murder conviction, versus which periods of incarceration were tied to Plaintiff's extant convictions.

Second, though the court granted Defendant City's motion for judicial notice of the October 5, 1982 Information, it did so without specifying that it took judicial notice of specific facts therein. 1-ER-002-023 at 1-ER-012. Thus, any reference to reasonably disputed facts within the Information that favor the Defendants would be improper. *Khoja*, 899 F.3d at 999; *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) ("[W]e may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed"). That a criminal indictment contains separate counts for murder and attempted murder—without taking as true any *facts* of how those alleged incidents took place—does nothing to support a conclusion that success on claims of constitutional violations regarding the now-vacated murder conviction would *necessarily* invalidate the intact attempted murder convictions.

The court's reliance on the motion for resentencing was also misguided, both because it exceeded the complaint and interpreted evidence against Plaintiff. That motion stated that "Mr. Williams was tried and convicted of all charges stemming

43

from the June 16, 1981 events: the first-degree murder of Donald Billingsley, two counts of attempted murder and one count of conspiracy to commit murder." 2-ER-076-233 at 2-ER-190. First and notably, the court expressly stated that no facts subject to reasonable dispute were judicially noticed within that motion for resentencing. 1-ER-002-023 at 1-ER-012. The statement in the motion for resentencing that Plaintiff's charges stemmed from one day of events is subject to varying interpretations of their overlapping factual nature. *Khoja*, 899 F.3d at 1000 ("It is improper to judicially notice a transcript when the substance of the transcript 'is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes.'" (quoting *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011)). Judicial notice of the document alone lacks *any* indication that the murder of Billingsley and the attempted murder of others contained identical factual scenarios, or sufficient facts such that Plaintiff's civil lawsuit would challenge the validity of the attempted murder convictions.

Without a complete record, it was error to hold that Plaintiff's intact convictions presented a *Heck* bar to his claims related to the Billingsley *murder* conviction. Reversal and remand are required for further factual development.

## III. At Minimum, And In the Alternative, Plaintiff Must Be Allowed To Amend The Complaint.

Under Rule 15(a)(2), leave to amend "shall be freely given when justice so requires," FED. R. CIV. P. 15(a)(2), and the "standards for granting leave to amend is

generous." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1997); *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 792 (9th Cir. 2009) (explaining that "requests for leave should be granted with 'extreme liberality.'") (quoting *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001)). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.,* 942 F.2d 1467, 1472 (9th Cir. 1991) (citation omitted).

Plaintiff should have been, at minimum, allowed to amend his complaint to address the issues that, under Rule 8, he was not required to anticipate or address in the complaint. While it is true that leave to amend should not be granted if amendment would be futile, that standard requires that "*no* set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Invenergy Thermal LLC v. Watson*, No. 23-3857, 2024 WL 5205745, at *3 (9th Cir. Dec. 24, 2024) (quoting *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (emphasis added)).

Here, Plaintiff should have been permitted to amend his complaint to address issues related to the statute of limitations, including potentially adding further details about the relationship between the murder convictions and, more important, about factors that go to equity—both as to equitable estoppel and equitable tolling

regarding his federal claims.[8] Given that these issues are often resolved at trial and cannot be dismissed at the pleading phase, and given that this Court requires tolling to be pleaded after an affirmative defense of statute-of-limitations has been raised, *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006), it was an abuse of discretion for the trial court to refuse to give Plaintiff even one opportunity to address these issues.

Likewise, Plaintiff should have been given leave to amend to address any *Heck* issues. If, for example, the court believed the allegations swept too broadly and thus covered the time Plaintiff served on the attempted murder convictions, Plaintiff should have been given the opportunity to set out—as he has done in this brief—that the 32 years for which he seeks damages are *not* those at issue with the attempt convictions. Likewise, though unnecessary to satisfy Rule 8, if the trial court wanted sufficient clarity on how the § 1983 complaint does not necessarily imply the invalidity of the extant convictions, Plaintiff could have easily done so.

However, despite Rule 15's liberal standards, Plaintiff was never even given such a chance. This, too, was error that requires reversal. *See, e.g.*, *Atwood v. United States*, 735 F. App'x 399, 400 (9th Cir. 2018) (reversing denial of leave to amend to

---

[8] Plaintiff did in fact allege such facts concerning the state-law claims. 3-ER-359-438 at 3-ER-369.

add claims that would not be subject to *Heck* bar); *Palmer v. Arizona*, No. 21-15020, 2022 WL 2304234, at *1 (9th Cir. June 27, 2022) (same).

## **CONCLUSION**

For the foregoing reasons, this Court should reverse and remand for further proceedings.

/s/ Meg Gould
Loevy & Loevy
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
*Counsel for Plaintiff-Appellant*

## **STATEMENT OF RELATED CASES**

The undersigned attorney or self-represented party states the following:

[X]    I am unaware of any related cases currently pending in this court.

[ ]     I am unaware of any related cases currently pending in this court

other than the case(s) identified in the initial brief(s) filed by the other party

or parties.

[ ]    I am aware of one or more related cases currently pending in this

court. The case number and name of each related case and its

relationship to this case are:

/s/Meg Gould
*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I am the attorney or self-represented party.

This brief contains 10,713 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief (select only one):

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

/s/Meg Gould
*Counsel for Plaintiff-Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2025, I electronically filed the foregoing with the Clerk of Court using ACMS, which will electronically send notice to all counsel of record.

/s/ Meg Gould
*Counsel for Plaintiff-Appellant*